UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| H. PACE BURT, JR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | FILE NO. 1:06CV154-WLS |
| GREAT NORTHERN INSURANCE | ) | |
| COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

## TABLE OF LEGAL AUTHORITY: GREAT NORTHERN'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**STATUTES CITED:**

| | |
|---|---|
| Fed. R. Civ. P. 56 | 10 |
| Fed. R. Civ. P. 36 | 13-14, 20 |
| O.C.G.A. § 33-4-6 | 30, 31 |

**CASES CITED:**

| | |
|---|---|
| Nolen v. Boca Raton Cmty. Hosp., 373 F.3d 1151 (11th Cir. 2004) | 10 |
| Celotex Corp. v. Catrett, 477 U.S. 317 (1986) | 10 |
| Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574 (1986) | 10 |
| Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) | 10 |
| National Security Fire & Cas. Co. v. London, 348 S.E.2d 580 (1986) | 15 |
| Grange Mutual Casualty Co. v. King, 331 S.E.2d 41 (1985) | 15, 20, 22 |

**CASES CITED (CONT'D):**

Pilot Life Insurance Company v. Morgan, 94 S.E.2d 765 (1956)     15

Owners Ins. Co. v. James, 295 F.Supp.2d 1354 (N.D. Ga. 2003)     16, 17

Allstate Ins. Co. v. Graves, 454 S.E.2d 616 (1995)     16

Thrift-Mart v. Comm. Union Assurance Cos., 268 S.E.2d 397 (1980)     16

Clean Air America, Inc. v. Hartford Cas. Ins. Co.,     17
2007 U.S. Dist. LEXIS 31461 (N.D. Ga. 2007)

Schwartz v. CNA Ins. Co., 406 F.Supp.2d 844 (N.D. Oh. 2005)     19-20

Aetna Cas. Ins. v. Empire Fire & Marine Ins., 442 S.E.2d 778 (1994)     23, 28

Richmond v. Georgia Farm Bureau Mut. Ins. Co., 231 S.E.2d 245 (1976)     23-24, 26

KHD Deutz of America v. Utica Mut. Ins. Co., 469 S.E.2d 336 (1996)     23

Bituminous Cas. Corp. v. J. B. Forrest & Sons, 209 S.E.2d 6 (1974)     23

Edwards v. Fidelity & Cas. Co. of New York, 199 S.E.2d 570 (1973)     24-25

Caldwell v. State Farm Fire & Cas. Ins. Co., 385 S.E.2d 97 (1989)     24

Townsend v. National Union Fire Ins., 397 S.E.2d 61 (1990)     24

Snow v. Atlanta International Ins., 354 S.E.2d 644 (1987)     24

EVI Equipment v. Northern Ins., 374 S.E.2d 788 (1988)     24

Protective Ins. Co. v. Johnson, 352 S.E.2d 760 (1987)     24

Bates v. Holyoke Mut. Ins. Co., 324 S.E.2d 474 (1985)     24

Roberson v. Weaver, 89 S.E. 769 (1916)     24-25

Wolverine Ins. Co. v. Sorrough, 177 S.E.2d 819 (1970)     26

Canadyne-Georgia Corp. v. Cont'l Ins, 999 F.2d 1547 (11th Cir. 1993)     26

**CASES CITED (CONT'D):**

Southeastern Express Sys. v. Southern Gty. Ins., 482 S.E.2d 433 (1997)   26

City of Atlanta v. St. Paul Fire & Marine Ins., 498 S.E.2d 782 (1998)   27

Colonial Oil Indus. V. Underwriters, 491 S.E.2d 337, 339 (1997)   27-28, 31

Primerica Life Ins. Co. v. Humfleet, 458 S.E.2d 908 (1995)   29, 31

Howell v. Southern Heritage Ins. Co., 448 S.E.2d 275 (1994)   29, 31

Arrow Exterminators v. Zurich, 136 F.Supp.2d 1340 (N.D. Ga. 2001)   30

Assurance Co. of America v. BBB Services Co., 576 S.E.2d 38 (2002)   31

Southern Fire & Cas. Ins. v. Northwest Ga. Bank, 434 S.E.2d 729 (1993)   31

1795847v.1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| H. PACE BURT, JR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | FILE NO. 1:06CV154-WLS |
| GREAT NORTHERN INSURANCE | ) | |
| COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

## **GREAT NORTHERN INSURANCE COMPANY'S**
**MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION FOR SUMMARY JUDGMENT**

## **INTRODUCTION**

Plaintiff H. Pace Burt, Jr. is a named insured on the Great Northern homeowners and excess liability policies which cover his personal home at 702 River Chase Lane in Albany, Georgia. However, there is no coverage under the Great Northern policies for any claim related to the underlying litigation. Furthermore, Plaintiff suffered no damages as a result of the underlying litigation, as he was not an owner, seller, or investor in the involved property and was not a named defendant in his individual capacity in the underlying litigation nor a party to the settlement agreement which resolved that litigation. Coverage for any and all claims made related to the underlying litigation was properly and justifiably

denied by Great Northern and Great Northern breached no duty owed to Plaintiff by denying coverage.  Great Northern's Motion for Summary Judgment should be granted.

## STATEMENT OF FACTS

1.  **Overview**

Plaintiff H. Pace Burt, Jr., filed this lawsuit in his individual capacity against Defendant Great Northern Insurance Company in the Superior Court of Dougherty County seeking a judgment that Plaintiff's policy with Great Northern provides coverage for claims asserted in and arising out of a lawsuit brought against Albany Lime & Cement Company, The Burt Company, Burt Development Company, H. Pace Burt, Jr. as Trustee of the Hotel Trust, Hilliard P. Burt, and Mark A. Harris by Michael and Deborah Riley Draper in Superior Court of Fulton County. (Complaint).  Great Northern timely filed its Answer to Plaintiff's Complaint and removed to the U.S. District Court for the Middle District of Georgia, Albany Division on grounds of Diversity Jurisdiction.  (Notice of Removal).  The suit has proceeded through discovery since that time and is now ripe for disposition by this Court.

2.  **Factual Background**

    A.  **Purchase, Construction, and Sale of 2875 Ridgewood Circle**

Plaintiff and Mark Harris agreed to of purchase, renovate, and resell a house in Atlanta, Georgia located at 2875 Ridgewood Circle.  Plaintiff's father and business partner, Hilliard P. Burt, Sr., approved of Plaintiff's proposal and agreed to allow Plaintiff to use funds from several of their family businesses to purchase and renovate the property.  (Plaintiff Depo., 49-50; Attorney Burt Depo., 17, 50-51; Harris Depo., 11; Boulding Depo., 79, 81).  Mark Harris was given a Power of Attorney for the respective investors and proceeded to purchase the property and begin construction on their behalf.  (Attorney Burt Depo., 25; Harris Depo., 20, 70, 114).

Harris acted as general contractor and was primarily responsible for overseeing the day-to-day work on the project at 2875 Ridgewood Circle.  (Harris Depo., 22-25; Boulding Depo., 84).  As part of the plans and designs for renovations to the property, they retained certain elements of the original structure and incorporated them into the new house.  These included: the brick fireplace and chimney, some of the trusses supporting the first floor, the rear deck of the house, and the French doors in the downstairs of the house.  (Harris Depo., 61-64; Rule 26 Report of Dr. Edward C. Haight, attached hereto as "Exhibit M", hereinafter "Haight Report", 3-5).

While Plaintiff maintained a supervisory role regarding the 2875 Ridgewood Circle property as a representative of the owners/sellers, he did not personally or in

an individual capacity own or invest financially in 2875 Ridgewood Circle.  Nor did Plaintiff personally invest in any of the construction, marketing, or other activity related to the 2875 Ridgewood Circle property.  Plaintiff was *at no time* an owner or seller of 2875 Ridgewood Circle in his individual capacity.  (Plaintiff Depo., 37-38, 76-78; Harris Depo., 12, 22; Boulding Depo., 82).

The renovation and construction work on the project also included the application of stucco.  This work was performed by Lazar Stucco, a subcontractor hired by Harris and paid by the owners/investors.   (Harris Depo., 64-65).  Additionally, the roofing of the house was performed by Williams Brothers Lumber according to design choices made by Harris and Plaintiff and reviewed by Quinn & Associates, an engineering firm retained by Harris for the project.  (Harris Depo., 65-68).

Work on the house was finished sometime in August or September 2004.  In September 2004 the owners/investors sold the property at 2875 Ridgewood Circle to Michael and Deborah Riley Draper.   (Warranty Deed, attached hereto as "Exhibit N").  Prior to the sale the Drapers reviewed a punch-list of items they wanted addressed concerning the property, and Harris, acting on the sellers behalf, agreed to address them per the Drapers' request.  While most of the punch-list items were addressed, the Drapers allegedly continued to add on to the list of requests.  (Harris Depo., 39-44; Attorney Burt letter of March 25, 2005).  Plaintiff

and Hilliard P. Burt, Sr. were both aware of these items.  (Harris Depo., 51-52; Attorney Burt Depo., 58; Plaintiff Depo., 70).   Work regarding the punch-list continued after the Drapers had moved into the house.

**B.     Drapers' Complaints and Claims Subsequent to Purchase of 2875 Ridgewood Circle**

As early as October 2004, the Drapers informed Harris that they might consider suing if their punch-list items were not addressed to their satisfaction. (Harris Depo., 50).  Their continued complaints were formalized in the form of the March 10, 2005 letter from their attorney, Lane R. Frostbaum, to Mark Harris. (Frostbaum letter of March 10, 2005).   This letter set forth allegations of deficiencies with the HVAC unit in the house, deficiencies with the stucco on the exterior of the house, as well as reiterating the incomplete status of the punch-list items previously brought to Harris' attention by the Drapers.   The letter unambiguously stated that but for immediate remediation of the alleged defects, the Drapers intended to pursue legal action.  (Frostbaum letter of March 10, 2005). Harris forwarded this letter to Hilliard P. Burt, Sr. shortly after receipt.  Upon a thorough review of the Drapers' allegations, Mr. Burt responded to Frostbaum on March 25, 2005.  (Attorney Burt letter of March 25, 2005).   Frostbaum replied directly to Mr. Burt in his letter of April 4, 2004, further illustrating the drapers' intent to pursue legal action.  (Frostbaum letter of April 4, 2005, attached hereto as

"Exhibit O").  Mr. Burt was fully aware at all times during this correspondence that the Burt family entities, including The Hotel Trust, were the actual owners/sellers of the property.  (Attorney Burt letter of March 25, 2005; Attorney Burt Depo., 65-66).

### C.    Plaintiff's Dealings with Great Northern

Great Northern was not given notice of any claims or potential claims related to the Draper lawsuit until January 16, 2006, when J. Smith Lanier & Company forwarded a General Liability Notice of Occurrence/Claim to Great Northern.   (Hedgepeth Depo., 26; Notice of Claim form, attached hereto as "Exhibit P").  Neither Plaintiff nor anyone on his behalf gave any notice of claims on the Great Northern policy related to the Draper lawsuit to *anyone* prior to the January 12, 2006 fax to Kenneth Grace at J. Smith Lanier.  (Burt fax to Grace of January 12, 2006; Attorney Burt Depo., 68-71; Hedgepeth Depo. 26-68).   This notice was not presented until *ten months after* correspondence from the Drapers' attorney made clear the Drapers' intentions of pursuing legal action against the owners/sellers of the property at 2875 Ridgewood Circle.  This was nearly *eight months after* suit had actually been filed against Plaintiff's business partner in the 2875 Ridgewood Circle project.  Additionally, it was *five months after* Plaintiff's attorney received notice of the Drapers' intent to add the actual owners/sellers of the property as defendants in the lawsuit.  (Frostbaum letter of August 16, 2005).

Once Great Northern *finally* received notice of the Draper lawsuit and Plaintiff's claim, both Plaintiff and Plaintiff's counsel were immediately contacted by Shannon Corley, a Litigation Examiner for Great Northern.   Ms. Corley followed up repeated telephone messages left for Plaintiff and a telephone conversation with Plaintiff's counsel by sending a letter to Plaintiff confirming Great Northern's receipt of the claim on January 17, 2006 and informing Plaintiff that an investigation to determine coverage for the claim was already underway. (Corley letter of January 17, 2006, attached hereto as "Exhibit Q").

Ms. Corley followed her January 17, 2006 letter with additional phone calls to the Plaintiff and a second letter on February 13, 2006 requesting Plaintiff's cooperation in Great Northern's investigation of the claim.   (Corley letter of February 13, 2006, attached hereto as "Exhibit R").   Ms. Corley then spoke with Plaintiff over the telephone on February 21, 2006 and, at his request, sent him additional questions relevant to Great Northern's investigation in writing that same day. (Corley letter of February 21, 2006, attached hereto as "Exhibit S").

Plaintiff made an abbreviated response to Ms. Corley's inquiries via his fax of February 23, 2006.  His responses made clear that: Plaintiff was not an owner or seller of the property in his individual capacity; that the property was purchased for the purpose of resale; and that the property and The Hotel Trust (as well as other owners/sellers) were insured under a CGL policy, although Plaintiff failed to

disclose the identity of the insurer or information identifying the policy or coverage.  Plaintiff's responses also concealed the existence of a construction contract between The Hotel Trust and the other owners/sellers and Mark Harris. (Plaintiff letter of February 23, 2006, attached hereto as "Exhibit T").

Following this correspondence and further investigation, Great Northern determined that Plaintiff's claims for defense and indemnification in the Draper lawsuit were not covered under the Great Northern policies and sent Plaintiff and Plaintiff's counsel a letter denying coverage for the claim and setting forth in detail Great Northern's bases for denial.  (Corley letter of March 16, 2006, attached hereto as "Exhibit U").  Plaintiff's subsequent requests for reconsideration of Great Northern's coverage evaluation were considered by Great Northern, but Great Northern did not receive any additional information from Plaintiff which would enable Great Northern to change its position on coverage.  (Corley letter of October 13, 2006, attached hereto as "Exhibit V").

### D.    Settlement of Draper Lawsuit

The Draper lawsuit was settled for a collective sum of $250,000 following mediation on August 6, 2006.  (Attorney Burt letter of September 19, 2006). Plaintiff signed the settlement agreement *only* in his capacity as trustee of The Hotel Trust, and was not a party to the settlement in his individual capacity. (Plaintiff Depo., 28; Harris Depo., 96; Settlement Agreement).  The Burt family

entities settled the Draper lawsuit for $250,000, just $15,000 less than the Drapers'
initial demand (Draper Amended Complaint), despite the fact that the cost to repair
the alleged defects with the Drapers' roof and stucco would only be an estimated
$6,500.  (Haight Report, 6-7).

$50,000 of the $250,000 settlement amount was paid by Travelers Insurance
as Hilliard P. Burt, Sr.'s personal insurance carrier.  (Attorney Burt Depo., 44).
The remaining $200,000 was paid from an escrow account held by Burt & Burt,
P.A.  (Burt & Burt, P.A. check, attached hereto as "Exhibit W" with authentication
from Lane R. Frostbaum).  Half of the monies paid from the escrow account came
from the owners/sellers of 2875 Ridgewood Circle who had been named
defendants in the Draper lawsuit.  This did not include contributions from Plaintiff
individually or from Mark Harris.  The remaining $100,000 was received from
Pace Burt, Inc., another Burt family company.  (Attorney Burt Depo., 58; Boulding
Depo., 32-33).   Plaintiff has not personally contributed any money to the
settlement nor has he personally reimbursed any of the Burt family entities that did
contribute to the settlement.  (Plaintiff Depo., 37; Attorney Burt Depo., 56, 76-77).
Plaintiff contends that he guaranteed any loss on the property in an equal share
with the owners/sellers as part of an unwritten agreement.  (Plaintiff Depo., 37;
Attorney Burt Depo., 56, 76-77; Boulding Depo., 80-81).

## STANDARD OF REVIEW

Summary judgment is appropriate if the record shows there are no genuine issues of material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case."  Nolen v. Boca Raton Cmty. Hosp. Inc., 373 F.3d 1151, 1154 (11th Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

In order to defeat summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Nor can the non-moving party rely merely on pleadings.  Rather, they must provide evidence in designating "specific facts showing that there is in fact a genuine issue for trial."  Celotex, 477 U.S. at 324.  The non-moving party must present specific evidence of every element material to his case so as to create a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 323 (1986). Otherwise, summary judgment must be entered against the non-moving party.  Id.

## <u>ARGUMENT AND CITATION OF AUTHORITY</u>

Great Northern is entitled to Summary Judgment in this case for all of the following reasons:

I.    Plaintiff suffered no loss or injury due to the underlying lawsuit.

II.    It is conclusively established as a matter of law under Federal Rule of Civil Procedure 36 that no coverage exists under the Great Northern policies for the Drapers' claims.

III.    Independent of Plaintiff's admission, Great Northern's policies provide no coverage for the Drapers' claims.

    A.    Coverage for the Drapers' claims is excluded because they allege no "occurrence" under the policy.

    B.    Coverage for the Drapers' claims is excluded as they arise out of Plaintiff's "business pursuits".

    C.    Coverage for the Drapers' claims is excluded as they arise out of "contractual liability" to others and "financial guarantees" provided by Plaintiff.

    D.    Coverage for the Drapers' claims is barred by Plaintiff's breach of the policies' notice of claim requirements.

IV.    Great Northern did not breach any duties owed to the Plaintiff.

V.    Plaintiff's claims for "bad faith" on the part of Great Northern

must fail as a matter of law.

**I.    Great Northern is entitled to Summary Judgment because Plaintiff suffered no loss or injury.**

Great Northern's Motion for Summary Judgment should be granted because Plaintiff did not suffer any loss or damages due to the claims related to the Draper lawsuit.   Plaintiff was not, in his individual capacity, a defendant to the Draper lawsuit or a party to the settlement agreement.    Nor is coverage provided under the Great Northern policies for Plaintiff in his capacity as Trustee of The Hotel Trust, as evidenced by the listed named insured on the policies as well as the policies' exclusionary language entitled "Director's liability," unequivocally states that Great Northern does not "cover any damages for any covered person's actions or failures to act as an officer or member of a board of directors of any corporation or organization."   While this exclusion does not apply to non-profit organizations, The Hotel Trust is an entity owned by the Burt family that is involved in for-profit real estate investment activities.   (Great Northern policies, T-6).   Therefore, Plaintiff's role as Trustee of The Hotel Trust *is not covered* by the Great Northern policies.

Additionally, it is undisputed that Plaintiff did not personally or in an individual capacity make any contribution to the purchase, renovation, marketing,

or sale of 2875 Ridgewood Circle.  Any agreement he allegedly made to indemnify the owners/sellers or any other party for any losses related to the project was merely gratuitous, and was clearly not based on any claims brought by the Drapers, as Plaintiff was not even a party to their lawsuit.

The property in question is not listed as an insured property under the Great Northern policies, and neither The Hotel Trust nor any other defendant to the Draper lawsuit was a named insured under the policies.  Furthermore, it is a matter of undisputed fact that Plaintiff has not made any financial contribution of any kind to the defense of the Draper lawsuit, the settlement of said lawsuit, or any other costs or expenses related to the Drapers' claims.  Therefore, Plaintiff has suffered no damages and has failed to state any claim upon which relief can be granted, and Great Northern's Motion for Summary Judgment should be granted.

## II.   Great Northern is entitled to Summary Judgment because it is "conclusively established" under Fed. R. Civ. P. 36 that no coverage exists for the Drapers' claims.

It is conclusively established under Fed. R. Civ. P. 36 that "the claims in the Draper litigation are not covered" under the Great Northern policies.  (Great Northern's Requests to Admit, attached hereto as "Exhibit X", ¶ 5).  Plaintiff failed to timely respond to Great Northern's Requests to Admit as provided by Fed. R. Civ. P. 36, which were served on Plaintiff's counsel by a true copy of same being

deposited in the U.S. Mail on January 16, 2007.  Plaintiff's responses were not received by Great Northern until March 28, 2007, 71 days later, when they were hand-delivered by Plaintiff's counsel to counsel for Great Northern at the deposition of Kenneth Grace along with a cover letter from Geri Boulding, legal assistant to Plaintiff's counsel, dated March 20, 2007 apologizing for failing to sufficiently address the responses previously.  (Affidavit of William J. Martin, attached hereto as "Exhibit Y"; Boulding letter of March 20, 2007, attached hereto as "Exhibit Z").  As Plaintiff plainly failed to provide a written response to Great Northern's Requests to Admit until long after the permitted thirty (30) day period for response had expired, the requests are deemed to be "Admitted" by Plaintiff under Rule 36.  The admitted requests include ¶ 5 of Great Northern's Requests to Admit, which states:

> "Admit that **the claims in the Draper litigation are not covered** under Great Northern policy numbers 12486441-01 and 12486441-02, with coverage dates of January 8, 2004 through January 8, 2005."

(Great Northern's Requests to Admit, ¶ 5; **emphasis added**). As this request is deemed admitted and conclusively established under Rule 36, there can be no issue of material fact as to whether the Drapers' claims were covered under the Great Northern policies, and Great Northern's Motion for Summary Judgment should be granted.

**III. Independent of Plaintiff's admission, Great Northern's policies provide no coverage for the Drapers' claims.**

The Draper lawsuit did not set forth any claims for which coverage under the Great Northern policies would apply.  First and foremost, Georgia courts have clearly and consistently held that it is the public policy of this State that insurance cases be handled as matters of contract law.  "Insurance is a matter of contract and it is contract law… that is ultimately controlling."  National Security Fire and Casualty Co. v. London, 180 Ga. App. 198, 200, 348 S.E.2d 580, 582 (1986).  "[A]n insurance policy is a contract and has the same attributes and requirements as any other contract.  Like any other contract, an insurance policy must be interpreted according to its plain language and its express terms…."  Grange Mutual Casualty Co. v. King, 174 Ga. App. 716, 718, 331 S.E.2d 41, 43 (1985).  "It is the function of the Court to construe a contract of insurance as it is written, and the Court by construction cannot create a liability not assumed by the insurer, nor make a new contract for the parties, nor one different from that plainly intended, nor add words to the contract to get it to create or avoid liability."  Pilot Life Insurance Company v. Morgan, 94 Ga. App. 394, 94 S.E.2d 765 (1956).

The specific terms, definitions, and exclusions provided in the Great Northern policies create numerous grounds for denying coverage of Plaintiff's claims.  Briefly stated, the Draper suit does not allege any claims resulting from an

"occurrence" as defined by the policy.  Furthermore, the claims in the Draper suit are excluded from coverage under the Great Northern policies as they originate from Plaintiff's "business pursuits" and from Plaintiff's "financial guarantees" and "contractual liability to third parties.  Finally, coverage for the claims is barred due to Plaintiff's breach of his contractual duty to provide Great Northern with notice of potential claims.

### A.    Claims alleged no "occurrence."

The Great Northern policies provide for personal liability coverage where "a covered person is legally obligated to pay" for personal injury or property damage "caused by an *occurrence*."  (Great Northern policies, T-1).  The policy defines an "occurrence" as "a loss or accident to which this insurance applies occurring within the policy period."  (Great Northern policies, A-1).  Under Georgia law, the focal point of determining whether or not a claim results from an occurrence for purposes of triggering insurance coverage lies with the accidental or intentional nature of the act or event.  Owners Ins. Co. v. James, 295 F.Supp. 2d 1354 (N.D. Ga. 2003).   Georgia courts have defined "accident" to mean "an unintended happening rather than one occurring through intention or design." Id. at 1363; *see also* Allstate Ins. Co. v. Grayes, 216 Ga. App. 419, 421, 454 S.E.2d 616, 618 (1995); Thrift-Mart, Inc. v. Commercial Union Assurance Cos., 154 Ga. App. 344, 346, 268 S.E.2d 397, 400 (1980).  "Applying that definition in similar cases, courts

have generally held that where an act is intentional, it does not constitute an 'accident' as that term is defined in an insurance policy." Owners Ins. 295 F.Supp. 2d at 1363.  Even when the claims set forth damages accidentally caused by an intentional act or design, coverage will not apply.  Clean Air America, Inc. v. Hartford Cas. Ins. Co., 2007 U.S. Dist. LEXIS 31461 (N.D. Ga. 2007).

Like the Plaintiff homeowners in Owners Ins., the Drapers claim that the owners/sellers intentionally designed and constructed the property at 2875 Ridgewood Circle.  Their damages are alleged to be entirely the result of the defective construction carried out by owners/sellers' contractor according to his plans and designs.  (Draper Amended Complaint, ¶¶ 17, 23).  Not only are the Drapers' damages alleged to have been the result of the owners/sellers' intentional acts and decisions, but each condition and component complained of *was actually* carried out according to deliberate design choices.  (Harris Depo., 61-68; Haight Report).  As the Draper lawsuit only claimed damages caused by intentional acts, and did not claim damages resulting from accidental acts, their Complaint failed to set forth any "occurrence" under the Great Northern policies.  Owners Ins. 295 F.Supp. 2d at 1358.  Coverage for Plaintiff was properly denied and Great Northern's Motion for Summary Judgment should be granted.

**B.      Claims are excluded from coverage as originating from Plaintiff's**

**business pursuits.**

The Great Northern policies *explicitly exclude* coverage for "damages arising out of a covered person's business pursuits, investment or other for-profit activities, for the account of a covered person or others, or business property." (Great Northern policies, T-7).  In this case, it is undisputed that all of Plaintiff's activities related to the 2875 Ridgewood Circle property were part of efforts to purchase, renovate, and resell the property *for a profit*.  As Plaintiff's own testimony clearly reveals:

> Q:      …you weren't purchasing the house to reside in it?
> **A:      Right.**
> Q:      …<u>you were purchasing the house to</u> fix it up and <u>sell it</u>?
> **A:      That's correct.  That's correct.**

(Plaintiff Depo., 117; <u>emphasis added</u>).   The testimony of Plaintiff's business partner and father, Hilliard P. Burt, Sr., further provides:

> Q:      Was there ever any plan that the property would be used for any other purpose other than to be sold for a profit?
> **A:      No.**
> Q:      Would you classify the 2875 Ridgewood Circle property as an investment property?
> **A:      Well, <u>it had the earmarks of investment, yes.</u>**

(Attorney Burt Depo., 75; <u>emphasis added</u>).

It is undisputed that the intention of Plaintiff in entering into the 2875 Ridgewood Circle project with Mark Harris was to generate a profit from the sale

of the property.  It is undisputed that the property was perceived by all parties involved, including Plaintiff, as *an investment property*, and that the renovation of the house and subsequent sale to the Drapers was intended to produce income for the respective investors and Plaintiff himself.  (Plaintiff Depo., 117; Attorney Burt Depo., 75; Grace Depo., 118-119; Harris Depo., 11-13, 28-31; Hedgepeth Depo., 32-33).

In Schwartz v. CNA Insurance Co., 406 F.Supp.2d 844 (N.D. Oh. 2005), the court was asked to apply *this very same exclusion* to strikingly similar facts.  In Schwartz, the insured/plaintiff was a doctor involved in several lawsuits related to a private practice he had started with a colleague.  There, just as in this case, the insured sought reimbursement for legal expenses incurred in those lawsuits under his personal homeowner's policy.  The homeowner's policy in question was a Chubb Masterpiece Policy, just like the Great Northern policies in this case, which contained *identical* terms regarding the policy's Business pursuits exclusion. Schwartz, 406 F.Supp.2d at 846-848.  In Schwartz, the insured argued that his claims arose out of the acts and omissions of his business partner, and not out of his own personal business pursuits.  Id. at 850.  The court rejected this argument and held that coverage under the Chubb Masterpiece Policy was barred by the Business pursuits exclusion because "the damages suffered derive from" the insured's practice.  Id.

This same analysis used by the Schwartz court is perfectly applicable in the present case. There is no question that Plaintiff entered into a business arrangement with Mark Harris and various investors to purchase, renovate, and resell the property at 2875 Ridgewood Circle. Even if Plaintiff argues that it was the acts and/or omissions of Harris, rather than himself personally, that gave rise to the Drapers' claims, it cannot be disputed that the claims still "derive from" the group's renovation and subsequent sale of the property, and therefore coverage is excluded under the Business pursuits exclusion of the Great Northern policies. Schwartz, *supra*.

Furthermore, due to Plaintiff's failure to timely respond to Great Northern's Requests to Admit (as discussed in Part II above), it is conclusively established under Rule 36 that **Plaintiff's "involvement with the ownership, construction, reconstruction, marketing, and/or sale of the property sold to the Drapers was a business pursuit, or an investment, or a for-profit activity."** (Great Northern's Requests to Admit, ¶ 4; **emphasis added**). This is *precisely* the type of activity that is *explicitly precluded* from coverage under the Great Northern policies. Under these undisputed facts and Plaintiff's own admissions, there is no question that the "plain language" of the policies excludes coverage for the Drapers' claims as same arise entirely out of the business pursuits of Plaintiff. Grange Mutual Casualty Co., *supra*.

**C.    Claims are excluded from coverage as originating from Plaintiff's financial guarantees and contractual liability to others.**

The Great Northern policies explicitly exclude coverage for "damages for any covered person's financial guarantee of the financial performance of any covered person, other individual or organization."  (Great Northern policies, T-8). Plaintiff readily admits that he made the decision to contribute $100,000 toward the $250,000 settlement of the Draper lawsuit based upon an agreement between the Plaintiff, the various Burt family entities, and Mark Harris that Plaintiff would guarantee any losses by the owners and investors in 2875 Ridgewood Circle in an amount equal to that paid by the owners and investors.  (Plaintiff Depo., 33-37; Attorney Burt Depo., 56, 76-77; Boulding Depo., 80-81).   As Plaintiff himself testified:

> Q.    …So is it your position that <u>you have guaranteed</u> any loss up to 20 percent as part of this deal?
> **A.    …<u>yeah</u>, that was it originally, but I guess when Mark fell out of the whole thing… then I… became responsible for 100 percent of the loss…**

(Plaintiff Depo., 33-34; <u>emphasis added</u>).  This promise by Plaintiff to guarantee a share of the potential losses of the investors in 2875 Ridgewood Circle is a "financial guarantee of the financial performance" of the project and its respective investors, and is therefore explicitly barred from coverage under the terms of the Great Northern policies.

Furthermore, this alleged agreement between Plaintiff and the Burt family entities also runs afoul of Great Northern's exclusion for contractual liability. That clause specifically states that:

> "We also do not cover any damages arising from contracts or agreements made in connection with any covered person's business. Nor do we cover any liability for unwritten contracts, or contracts in which the liability of others is assumed after a covered loss."

(Great Northern policies, T-8.  It is undisputed that Plaintiff's alleged contribution to the settlement was made according to the unwritten agreement made in connection with Plaintiff's business, in which he allegedly assumed the liability of the owners/sellers related to the Drapers' claims.   There is no question that coverage is excluded under the "Contractual liability" clause of Great Northern's policies.

Plaintiff's alleged damages ($100,000 share of the settlement payment) related to the Draper lawsuit arise *solely* from his alleged obligation to the investors under this guarantee agreement, and thus are not covered under the "express terms" of the Great Northern policies.   Grange Mutual Casualty Co., *supra*.  Great Northern's Motion for Summary Judgment should be granted.

**D.    Coverage for claims is barred due to Plaintiff's breach of his duty to give notice of the occurrence as soon as possible.**

In the section entitled "Your duties after a loss," the Great Northern policies sets forth a mandatory prerequisite for coverage as follows:

"In case of an accident or occurrence, the covered person *shall perform* the following duties that apply:
**Notification.** *You must notify* us or your agent *as soon as possible.* If you do not provide notice, any person injured in the accident may provide written notice of the claim."

(Great Northern policies, Y-3, *emphasis added*).  Georgia courts have interpreted the obligation to provide notice of an "occurrence" as a condition precedent to coverage.  Aetna Cas. Ins. v. Empire Fire & Marine Ins. Co. , 212 Ga. App. 642, 442 S.E.2d 778 (1994); Richmond v. Georgia Farm Bureau Mut. Ins. Co., 140 Ga. App. 215, 231 S.E.2d 245 (1976); KHD Deutz of America Corp. v. Utica Mutual Ins. Co., 220 Ga. App. 194, 469 S.E.2d 336 (1996).

In this case, Plaintiff failed to provide notice of occurrence to his insurance agent or Great Northern until January 12, 2006, *four months* after the amended complaint had been filed, *five months* after his attorney received notice of the Drapers' intent to amend the complaint, *seven months* after the original lawsuit had been filed against Mark Harris, *ten* months after the Drapers had given notice of their intent to pursue legal recourse, and *over a year* after first becoming aware of the Drapers' initial complaints regarding the property.  In Georgia, such delay is grounds for a grant of summary judgment to the insurer based on the policy's notice requirement.  Bituminous Casualty Corp. v. J. B. Forrest & Sons, Inc., 132 Ga. App. 714, 209 S.E.2d 6 (1974) (summary judgment for insurer based on

breach of notice requirement where four month delay); Edwards v. Fidelity &
Casualty Co. of New York, 129 Ga. App. 306, 199 S.E.2d 570 (1973) (five month
delay);  Caldwell v. State Farm Fire & Casualty Ins. Co., 192 Ga. App. 419, 385
S.E.2d 97 (1989) (six month delay); Townsend v. National Union Fire Ins. Co.,
196 Ga. App. 789, 397 S.E.2d 61 (1990) (seven month delay); Richmond, 231
S.E.2d 245 (eight month delay); Snow v. Atlanta International Ins. Co., 182 Ga.
App. 1, 354 S.E.2d 644 (1987) (ten month delay); EVI Equipment, Inc. v. Northern
Ins. Co., 188 Ga. App. 818, 374 S.E.2d 788 (1988) (eleven month delay).

Delay by the insured in providing notice of an occurrence to the insurer is
not excused simply because the insured made his own assessment regarding his
potential liability.  Richmond, 231 S.E.2d at 249.  Nor is such delay excused due to
the insured's ignorance as to the terms of the policy.   Protective Ins. Co. v.
Johnson, 256 Ga. 713, 714, 352 S.E.2d 760, 761 (1987); Townsend, 397 S.E.2d at
62-63.  Nor can the insured's delay in providing his insurer with notice be excused
by any ignorance or misunderstanding as to legal theories underlying the claims.
Bates v. Holyoke Mut. Ins. Co., 253 Ga. 697, 324 S.E.2d 474 (1985).  In this case,
Plaintiff's delay in providing notice to Great Northern is completely unjustified,
and warrants Summary Judgment in favor of Great Northern.

Under the notice provisions of the policies, an insured must act promptly
when providing notice of a potential claim.  In the case of Roberson v. Weaver,

145 Ga. 626, 89 S.E. 769 (1916), the Supreme Court of Georgia was asked to determine and define a contracting party's obligation regarding performance of a contractual duty in a given time period.  They held that: "[t]he words, 'as soon as practicable,' as used in a contract requiring that it should be performed as soon as practicable, are practically synonymous with 'speedily.'" Id. at 772-773.

While the Great Northern policies use slightly different language, exchanging "possible" for "practicable," the Court's holding in Roberson remains on point regarding the nature of the duty imposed on Plaintiff by this clause. Plaintiff's prolonged delay of *ten months* in providing notice *even after* the Drapers had made clear their intent to sue is irreconcilable with his duty to have provided notice "as soon as possible" under the terms of his contract with Great Northern.

Where, as is the case here, an insured has knowledge of an occurrence and fails to give the insurer notice of that occurrence, his actions are unreasonable as a matter of law.  Edwards, 199 S.E.2d at 571.  Viewing the facts in the light most favorable to Plaintiff, there can be no argument but that Plaintiff knew he was going to be sued in his capacity as Trustee of The Hotel Trust *no later than* August 16, 2005, when his counsel received notice from the Drapers' attorney of the Drapers' intent to amend the complaint.  His delay of five months between that notice and finally giving notice of the Drapers' claims to J. Smith Lanier on

January 12, 2006 was in breach of his contract with Great Northern and unreasonable as a matter of a law.

It should also be noted that Georgia law does not require any prejudice be shown by the insurer as a result of the insured's delay in providing notice.

> "…[T]he failure to give a reasonably timely notice of the accident or of the receipt of any demand, notice, summons or other process will release the insurer from the obligations imposed by the contract, *although no prejudice may have resulted*."

Wolverine Ins. Co. v. Sorrough, 122 Ga. App. 556, 562, 177 S.E.2d 819, 823 (1970) (*emphasis added*); *see also* Canadyne-Georgia Corp. v. Cont'l Ins. Co., 999 F.2d 1547 (11th Cir. 1993); Southeastern Express Systems v. Southern Guaranty Ins. Co., 224 Ga. App. 697, 701, 482 S.E.2d 433, 436 (1997) ("appellee was not required to show it was prejudiced by appellants' failure to give notice, as the notice requirement was a condition precedent under the policy"); Richmond v. Georgia Farm Bureau Mut. Ins. Co., 140 Ga. App. 215, 222, 231 S.E.2d 245, 250 (1976) ("there is no need for an insurer to prove it was prejudiced by an insured's failure to give notice").

Plaintiff's delay in notifying Great Northern of the Drapers' claims and subsequent lawsuit was unreasonable as a matter of law and constitutes a breach of Plaintiff's contractual duties under the Great Northern policies.  His failure to provide notice for *at least* five months after litigation against the several Burt family entities was imminent justifies a denial of coverage by Great Northern

under Georgia law, and Great Northern's Motion for Summary Judgment should be granted.

## IV.   Great Northern is entitled to Summary Judgment because it did not breach any duty owed to Plaintiff.

Plaintiff asserts that Great Northern owed him a duty to provide a defense in the Draper lawsuit as well as a duty to indemnify him for the settlement of same. These assertions are entirely void of legal or factual merit.  In <u>City of Atlanta v. St. Paul Fire & Marine Ins. Co.</u>, 231 Ga. App. 206, 498 S.E.2d 782 (1998), the Georgia Court of Appeals held:

> An insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured. <u>Canal Indem. Co. v. Chastain</u>, 228 Ga. App. 255, 256 (491 S.E.2d 474) (1997). We look to the allegations of the complaint to determine whether a claim covered by the policy is asserted. <u>Great Am. Ins. Co. v. McKemie</u>, 244 Ga. 84, 85-86 (259 S.E.2d 39) (1979). However… *where the complaint filed against the insured does not assert any claims upon which there would be insurance coverage, the insurer is justified in refusing to defend the insured's lawsuit.* <u>Leader Nat. Ins. Co. v. Smith</u>, 177 Ga. App. 267, 274 (5) (339 S.E.2d 321) (1985).

<u>City of Atlanta</u>, 498 S.E.2d at 784 (*emphasis added*); *see also* <u>Colonial Oil Indus. V. Underwriters</u>, 268 Ga. 561, 562, 491 S.E.2d 337, 339 (1997).

In this case, the Drapers' suit did not allege *any* claims upon which there would be coverage under the Great Northern policies.  Great Northern investigated the Drapers' claims and Plaintiff's policy and determined that none of the claims

gave rise to coverage for the reasons set forth above, most of which were detailed in Shannon Corley's March 16, 2006 letter to Plaintiff.  No facts or information were ever provided by Plaintiff before, after, or simultaneous with his requests for reconsideration of Great Northern's coverage position sufficient to bring the claims within the policies' scope coverage.  Since no claim made by the Drapers was covered by Plaintiff's policies, Great Northern was justified in refusing to provide a defense in the Draper lawsuit.  Colonial Oil, 491 S.E.2d at 339.

Plaintiff also erroneously asserts that Great Northern owes him indemnification for alleged damages related to the settlement of the Draper suit.  It is well-established by Georgia courts that an insurer's duties to defend and indemnify are completely separate obligations to which different standards apply.  Colonial Oil, supra.  While an insurer's duty to defend is a contractual duty that may be triggered by the allegations of the complaint or factual allegations of the insured, its duty to indemnify only exists where coverage is actually triggered by the facts.  Thus, even if an insurer is determined to have wrongly breached its duty to defend, that insurer is not estopped from asserting defenses as to the actual existence of coverage nor is the insured automatically entitled to indemnification.  Id., see also Aetna Cas. & Sur. Co. v. Empire Fire & Marine Ins. Co., 212 ga. App. 642, 646, 442 S.E.2d 778, 783 (1994).  As there are not even sufficient *allegations* to warrant a duty to defend on the part of Great Northern, there cannot be sufficient

facts to impose upon Great Northern a duty to indemnify Plaintiff for damages allegedly suffered as a result of the settlement of the Burt family entities with the Drapers.

Great Northern did not breach any duty owed to Plaintiff, and this Motion for Summary Judgment should be granted.

## V.   Great Northern is entitled to Summary Judgment as to Plaintiff's claims for Bad Faith Damages.

### A.   Plaintiff never made a "bad faith" demand.

"In order to prevail on a claim for an insurer's bad faith, the insured must prove at least two conditions: (1) that a demand for payment was lodged against the insurer at least 60 days prior to filing suit and (2) that the insurer's failure to pay was motivated by bad faith." Primerica Life Ins. Co. v. Humfleet, 217 Ga. App. 770, 771, 458 S.E.2d 908, 910 (1995) *citing* Howell v. Southern Heritage Ins. Co., 214 Ga. App. 536, 537, 448 S.E.2d 275 (1994). The insured is required to prove the first condition, as to a demand for payment, to ensure that the insurer is notified of the possible bad faith claim. Id. In this case, as in Primerica, where the Georgia Court of Appeals reversed the trial court in granting summary judgment for the insurer as to Plaintiff's bad faith claims, the Plaintiff failed to provide notice that was either substantively adequate or timely.

The only monetary demand ever sent by Plaintiff to Great Northern was the September 19, 2006 letter from Plaintiff's counsel to Shannon Corley in which he requested that Ms. Corley evaluate a demand for $50,000 and respond within 15 days.  (Burt letter of September 19, 2006; Attorney Burt Depo., 73-74).  This demand is insufficient to trigger any recovery by Plaintiff under O.C.G.A. § 33-4-6, as it makes no reference whatsoever to the statute and fails to even mention "bad faith."  Arrow Exterminators, Inc. v. Zurich American Ins. Co., 136 F.Supp. 2d 1340, 1357 (N.D. Ga. 2001).   Furthermore, *even if* Plaintiff's demand of September 19, 2006 had been sufficient in terms of content, it still fails to meet the standard required to trigger O.C.G.A. § 33-4-6 because it was written just 27 days prior to the Plaintiff's filing of this suit against Great Northern on October 16, 2006.   (Burt letter of September 19, 2006; Attorney Burt Depo., 73-74; Complaint).  Great Northern is entitled to Summary Judgment as to Plaintiff's demand for "bad faith" penalties or attorney's fees and expenses under O.C.G.A. § 33-4-6.

### B.      There was no "bad faith" failure to defend by Great Northern.

When Plaintiff first requested coverage for the Draper lawsuit under Great Northern's policies, the litigation with the Drapers had not yet been settled and was still ongoing.   Therefore, Great Northern's denial of coverage at most affected Plaintiff as to his ongoing defense of the Draper lawsuit.  Under O.C.G.A. § 33-4-

6, an insured can bring a bad faith claim against an insurer *only* for its refusal to pay a claim, *not*, as Plaintiff alleges, for a refusal to defend.  Howell, 448 S.E.2d at 276.  The insurer's duty to defend is separate and independent of its duty to pay, Colonial Oil, 491 S.E.2d at 339, and thus bad faith penalties under O.C.G.A. § 33-4-6 cannot be applied to an insurer's refusal to defend.  Great Northern's Motion for Summary Judgment should be granted.

**C.    Great Northern's disclaimer of coverage was made in good faith.**

Finally, an insured cannot recover for bad faith under O.C.G.A. § 33-4-6 unless he can also prove that the insurer's refusal to pay was made in bad faith.  Primerica, 458 S.E.2d at 910.  Where an insurer has "*any* reasonable ground" to contest the insured's claim "[p]enalties for bad faith are not authorized."  Assurance Co. of America v. BBB Services Co., Inc., 259 Ga. App. 54, 56, 576 S.E.2d 38, 44 (2002).  Here, Great Northern had not merely one, but *seven* separate and independent bases for their denial of coverage.  Therefore, Plaintiff's claims for penalties under O.C.G.A. § 33-4-6 are not permitted as a matter of law.  Southern Fire & Cas. Ins. Co. v. Northwest Georgia Bank, 209 Ga. App. 867, 434 S.E.2d 729 (1993).

## CONCLUSION

Great Northern is entitled to Summary Judgment in this case as to all of Plaintiff's claims.  Plaintiff was not a defendant to the underlying litigation and

personally suffered no loss or damages as a result of that suit or its settlement. Additionally, Great Northern did not breach any duty allegedly owed to Plaintiff so as to give rise to Plaintiff's claims.  Based on the uncontested facts of this case and Plaintiff's own admissions, the Great Northern policies provide no coverage whatsoever for the claims arising out of the Draper lawsuit, and coverage for Plaintiff's claims were properly denied.  For all of the foregoing reasons this Court should GRANT Great Northern Insurance Company's Motion for Summary Judgment as to all counts of Plaintiff's Complaint.

This 8th day of June, 2007.

SWIFT, CURRIE, McGHEE & HIERS, LLP


By:   /s/ William J. Martin
      Stephen L. Cotter
      Georgia State Bar No.:  189725
      William J. Martin
      Georgia State Bar No. 387464
      Attorneys for Defendant

The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, GA   30309-3231
(404) 874-8800

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have this day served a copy of the within and

foregoing upon all parties to this matter by depositing a true copy of same in the

U.S. Mail, proper postage prepaid, addressed to counsel of record as follows:

> Hilliard P. Burt, Esq.
> Burt & Burt, P.A.
> P.O. Box 71925
> Albany, GA   31708-1925

This 8th day of June, 2007.

SWIFT, CURRIE, McGHEE & HIERS, LLP


By:   <u>/s/ William J. Martin</u>
Stephen L. Cotter
Georgia State Bar No.:  189725
William J. Martin
Georgia State Bar No. 387464
Attorneys for Defendant

The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, GA   30309-3231
(404) 874-8800

1789499v.1